***NOT FOR PUBLICATION***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JIVKO ATANASSOV, *et al.*, *individually and on behalf of all other persons similarly situated*, | Civil Action No. 15-3628 (FLW)(LHG) |
| Plaintiff, | **OPINION** |
| v. |  |
| AMSPEC SERVICES, LLC, *a New Jersey Limited Liability Company*, |  |
| Defendant. |  |

**WOLFSON, United States District Judge**:

This matter comes before the Court on Defendant Ampsec Services, LLC's ("Defendant" or "Amspec") motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the putative collective action[1] initiated by named Plaintiffs Jivko Atanassov, Carlos DeLuna, and Anthony Floyd ("Plaintiffs"), based on the first-filed rule or, in the alternative, transfer this case to the United States District Court for the Southern District of Texas. For the following reasons, Defendant's motion to dismiss based upon the first-filed rule is denied, but the motion to transfer

---

[1] *See Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242-43 (3d Cir. 2013) ("Under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), an employee may bring an action against his employer individually, on his own behalf, and collectively, on behalf of other 'similarly situated' employees. [*Genesis Healthcare Corp. v. Symczyk*, __ U.S. __, 133 S. Ct. 1523, 1527 (2013).] In order to become parties to a collective action under Section 16(b), employees must affirmatively opt-in by filing written consents with the court. 29 U.S.C. § 216(b). This feature distinguishes the collective-action mechanism under Section 16(b) from the class-action mechanism under Federal Rule of Civil Procedure 23, where, once the class is certified, those not wishing to be included in the class must affirmatively opt-out.").

1

is granted pursuant to 28 U.S.C. § 1404(a); this matter is transferred the United States District Court for the Southern District of Texas.

I.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are drawn from the respective complaints filed in these matters, unless otherwise noted.[2]

    A.     **The Texas Action**

On July 24, 2014, plaintiffs Charles Barbara and Robert Martinez, Jr. ("Texas Plaintiffs") filed a collective-action lawsuit against Ampsec in the United States District Court for the Southern District of Texas on behalf of Amspec's inspectors and dispatchers, alleging violations of the overtime and minimum wage provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C., § 201, *et seq.* ("Texas Action"). Tx. Compl. ¶¶ 1-4. The complaint in the Texas Action asserts two claims: (1) violation of the FLSA for failure to pay overtime, *id.* at ¶¶ 45-56, and (2) violation of the FLSA for failure to pay minimum wage, *id.* at ¶¶ 57-63.

The Texas Plaintiffs allege that Amspec (1) disguised certain forms of compensation "as reimbursed expenses for the sole purpose of excluding them from the proper overtime compensation"; (2) compensated its employees "based on an illegal adoption of the fluctuating work week method" of pay ("FWW")," an alternative system of calculating overtime that allows for a half-time, as opposed to a one and one-half time, overtime multiplier; and (3) "misclassif[ied] its dispatchers as exempt from overtime pay" under the FLSA. *Id.* at ¶¶ 22, 25, 35. According to

---

[2] In evaluating a motion to dismiss, the Court "may consider documents that are attached to or submitted with the complaint and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)) (citation omitted).

the Texas Plaintiffs, "these misdoings also violate the minimum wage provisions of the FLSA because, when accounting for the amount of hours worked by Texas plaintiffs and class members during certain weeks, their average pay dipped below $7.25 an hour." *Id.* at ¶ 58.

### B.   The *Camin Cargo* Decision

On April 16, 2015, while the Texas Action was pending, a decision was issued in *Hanson v. Camin Cargo Control, Inc.*, No. H-13-0027, 2015 U.S. Dist. LEXIS 49896 (S.D. Tex. Apr. 16, 2015). The plaintiffs in *Camin Cargo*, who were represented by the same attorneys representing Texas Plaintiffs in the Texas Action (and the plaintiffs in this action), had filed an unrelated collective action on behalf of the inspectors and dispatchers of Camin Cargo Control, Inc., an oil and gas inspection company. Like in the Texas Action, the plaintiffs in *Camin Cargo* alleged that their employer violated the overtime provisions of the FLSA by (1) disguising compensation as reimbursed expenses, (2) illegally adopting the FWW in calculating overtime premiums, and (3) misclassifying dispatchers as exempt from overtime pay. *Id*. at *3-4, 7, 15, 22. Although the *Camin Cargo* decision was favorable to the plaintiffs with respect to liability on these issues, the court disagreed with the plaintiffs' method for calculating damages, which, in turn, limited the plaintiffs' total recovery. *Id*. at *15, 22, 26.

### C.   The New Jersey Action

On May 29, 2015, a month after the *Camin Cargo* decision and almost eleven months after the Texas Action was commenced, Plaintiffs filed the instant lawsuit ("NJ Action"), and filed an Amended Complaint on June 19, 2015. The NJ Action is a collective action lawsuit only on behalf of Amspec's inspectors alleging violations of the overtime and anti-retaliation provisions of the FLSA. The Amended Complaint alleges that Amspec "diluted its employees' overtime rate of pay by disguising compensation as a reimbursed expense," and that "Amspec…took advantage of the

[FWW]." *Am. Compl.* ¶ 1; *see id.* ¶¶ 65-77. The Amended Complaint in the NJ Action asserts two claims under the FLSA: (1) failure to pay overtime, *id.* at ¶¶ 65-70, and (2) retaliation, *id.* at ¶¶ 71-77. The NJ Action also includes two state law class action claims against Amspec alleging violations of the New Jersey State Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a to -56a38, and the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 P.S. §§ 333.101-333.115. *Id.* ¶¶ 4-5, 78-80, 81-87.

On July 24, 2015, Defendant filed the instant motion to dismiss based on the first-filed rule or, in the alternative, to transfer the matter to the United States District Court for the Southern District of Texas based upon 28 U.S.C. §1404(a).

## II. DISCUSSION

### A. The First-Filed Rule Does Not Apply Because the Texas Action and New Jersey Action are Not "Truly Duplicative."

Under the "first-filed rule," the Third Circuit has instructed that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941), *cert. denied*, 315 U.S. 813 (1942)). "The first-filed rule counsels deference to the suit that was filed first, when two lawsuits involving the same issues and parties are pending in separate federal district courts." *Honeywell Int'l, Inc. v. Int'l Union*, 502 F. Appx. 201, 205 (3d Cir. 2012) (citing *Univ. of Pa.*, 850 F.2d at 971). The Third Circuit has explained that, for the first-filed rule to apply:

> [T]he later-filed case must be truly duplicative of the suit before the court . . . That is, the one must be materially on all fours with the other . . . The issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other.

4

*Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 334 n.6 (3d Cir. 2007) (quotations and citations omitted)[3]; *see also Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37, 40 (3d Cir. 1980) (holding "[i]t is important, however, that only truly duplicative proceedings be avoided. When the claims, parties or requested relief differ, deference may not be appropriate."); *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 448 (D.N.J. 2014); *Wheaton Indus., Inc. v. Aalto Sci.*, No. 12-6965, 2013 U.S. Dist. LEXIS 118524, *5-6 (D.N.J. Aug. 21, 2013); *Worthington v. Bayer Healthcare LLC*, No.'s 11-2793, 11-3017, 11-3299, 2011 U.S. Dist. LEXIS 144369, *14-15 (D.N.J. Dec. 15, 2011); *Glover v. Ferrero USA, Inc.*, No. 11-1086, 2011 U.S. Dist. LEXIS 121352, *13-14 (D.N.J. Oct. 20, 2011). "[H]owever, the first-filed rule is not rigidly applied nor absolute.

---

[3] The Court notes that a disagreement exists among the district courts within this Circuit as to the first-filed rule's "same issues" requirement, with several courts declining to follow the Third Circuit's instruction in *Girder*. *See, e.g.*, *Law Sch. Admission Council, Inc. v. Tatro*, No. 15-5219, 2015 U.S. Dist. LEXIS 172393, *14-17 (E.D. Pa. Dec. 29, 2015); *Sinclair Cattle Co. v. Ward*, 80 F. Supp. 3d 553`, 558-59 (M.D. Pa. 2015); *Palagano v. NVIDIA Corp.*, No. 15-1248, 2015 U.S. Dist. LEXIS 112146, *4-8 (E.D. Pa. Aug. 19, 2015); *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 456 (E.D. Pa. 2013). Those courts reason that the Third Circuit's instruction in *Girder*, which relied on caselaw from the First and Sixth Circuits, *see Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997); *Congress Credit Corp. v. AJC Int'l*, 42 F.3d 686, 689 (1st Cir. 1994), was dictum and, therefore, they "do not believe the Third Circuit has held that the first-filed rule requires the two cases to be duplicative or identical." *Synthes*, 978 F. Supp. 2d at 456. Instead, relying on other, unpublished, post-*Girder* district court decisions which did not directly address the footnote in *Girder*, these courts reason that "the rule's application is not cabined to proceedings involving identical parties and identical issues, but extends to cases where there is a substantial overlap of the subject matter." *Id.* at 457. However, this Court disagrees that the Third Circuit's direction in *Girder* was dictum. An appellate court's ruling is dictum only if not necessary to fully decide the issue before it. *See IMO Indus. v. Kiekert AG*, 155 F.3d 254, 261 n.4 (3d Cir. 1998). In *Girder*, the district court gave alternative reasons for its decision. The appellate court considered and rejected both reasons (as it had to for completeness), *holding* both reasons invalid and explaining why. Such alternative appellate *holdings* are, by definition, not dicta. *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949); *Best Life Assurance Co. v. IRS*, 281 F.3d 828, 834 (9th Cir. 2002) (alternative holdings are not dicta). Moreover, even if the Third Circuit's instruction concerning application of the first-filed rule were dictum and not binding, it is nevertheless "instructive as to the position of a particular appellate panel." *United States v. Conston, Inc. (In re Conston, Inc.)*, 181 B.R. 769, 774-75 (D. Del. 1995).

5

Indeed, the Third Circuit has recognized that district courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *Glover*, 2011 U.S. Dist. LEXIS 121352 at *14 (internal quotation marks and citations omitted). Those circumstances include: (1) bad faith; (2) forum-shopping; (3) when a second-filed action has developed further than the initial suit; and (4) when the first action was filed in anticipation of an imminent suit in another, less favorable forum. *See Univ. of Pa*, 850 F.2d at 976-77.

In applying this test here, it is clear that the subject matter of the two actions is not "truly duplicative."[4] The complaint in the Texas Action asserts claims against Amspec, on behalf of inspectors and dispatchers, for (1) failure to pay overtime under the FLSA, Tx. Compl. ¶¶ 45-56, and (2) failure to pay the minimum wage under the FLSA, *id.* at ¶¶ 57-63. In contrast, the Amended Complaint in the NJ Action asserts claims against Ampsec, only on behalf of inspectors, for (1) failure to pay overtime under the FLSA, Am. Compl. ¶¶ 65-70, (2) retaliation under the FLSA, *id.* at ¶¶ 71-77, and (3) violations of the NJWHL and PMWA, *id.* ¶¶ at 78-80, 81-87. Indeed, based on the different claims, the resolution of the Texas Action will not address Plaintiffs' retaliation claim under the FLSA, nor will it address Plaintiffs' state-law based claims,[5] which will clearly leave more than "little or nothing" to be determined in the NJ Action. *Grider*, 500 F.3d at 334 n.6.

---

[4] Because the Court finds that the subject-matter of the two matters is not "truly duplicative," it will not address the parties' arguments concerning the level of identity of the plaintiffs in the two matters.

[5] Without addressing the merits of Plaintiffs' state-law claims, the Court notes, as an example, that the Eastern District of Pennsylvania has observed that the FLSA and PMWA, and their regulations, appear to treat the propriety of the FWW method of payment differently. *See, e.g.*, *Verderame v. Radioshack Corp.*, 31 F. Supp. 3d 702, 709-10 (E.D. Pa. 2014).

Defendant's argument – that this Court should apply the first-filed rule because Plaintiffs' choice of New Jersey is blatant forum-shopping which seeks to avoid the effects of the *Camin Cargo* decision by adding claims and parties – turns the analysis on its head. This Court's discretion exists to "*retain* jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *Univ. of Pa.*, 850 F.2d at 972 (emphasis added). It is not within this Court's discretion to apply the first-filed rule to *forego* jurisdiction when the rule's narrow requirements are not met. Moreover, the analysis of forum-shopping as an exception to the first-filed rule has traditionally focused on whether the *initial* suit was the product of forum-shopping, not the later-filed suit. *See id.* at 976-77. Thus, although these arguments are relevant to the transfer analysis, discussed below, they do not impact the conclusion that the two actions are not "materially on all fours with each other," and, therefore, that the first-filed rule does not apply. *See Grider*, 500 F.3d at 334 n.6.

Accordingly, Defendant's motion to dismiss this matter based on the first-filed rule is denied.

### B. Transfer to the United States District Court for the Southern District of Texas.

Although this Court denies Defendant's motion to dismiss on the basis of the first-filed rule, it may still transfer the matter under 28 U.S.C. § 1404(a).[6] *See Arnica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011). Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* (internal quotations omitted).

---

[6] In considering whether to transfer a case, the Court may consider "affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973).

Three factors must be considered when determining whether to grant a transfer under Section 1404(a): (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 526 (D.N.J. 2000) (citing 28 U.S.C. § 1404(a); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). These factors are not exclusive, and must be applied in an "individualized analysis . . . made on the unique facts presented in each case." *Id.* at 526-27 (citations omitted). The first two factors have been refined into a non-exhaustive list of private and public interests that courts should consider. *See Jumara*, 55 F.3d at 879-80. As set forth below, a balance of the pertinent private and public interests, and consideration of the interests of justice, indicates that transfer of this matter to the United States District Court for the Southern District of Texas is appropriate.

### i. The Private Interests Weigh in Favor of Transfer.

Under Section 1404(a), a court should consider the following private factors:

> (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (citing *Jumara*, 55 F.3d at 879) (internal quotations omitted). The Court finds all of these factors are all either neutral or weigh in favor of transfer.

While a plaintiff's choice of forum is a "paramount concern" that is considered "presumptively correct," *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 452 (D.N.J. 1999), "[t]he choice of forum by a plaintiff is simply a preference; it is not a right." *Liggett*, 102 F. Supp. 2d at 530. Although two of the named plaintiffs are residents of New Jersey, and a third is a

8

Pennsylvania resident, where a plaintiff is suing on behalf of a putative class, courts have "afforded little deference to a [p]laintiff's choice of forum" because "in such actions the participation of the class representative is generally minimal" and "the potential members of the class will likely be scattered across the United States." *Santomenno v. Transamerica Life Ins. Co.*, No. 11-736, 2012 U.S. Dist. LEXIS 44883, *15-17 (D.N.J. Mar. 30, 2012) (internal quotation marks and citations omitted); *see also Prof. Adjusting Syss. of Am., Inc. v. Gen. Adjustment Bureau, Inc.*, 352 F. Supp. 648, 650 (E.D. Pa. 1972). Indeed, while the plurality of plaintiffs that have opted into this collective action are in Texas (35) (with 28 located in New Jersey), plaintiffs in California, Connecticut, Florida, Louisiana, Massachusetts, Maryland, Maine, New York, and Virginia have chosen to opt into this suit as well.[7] Certification of Andrew Mortensen (dated July 24, 2015) [hereinafter "Mortensen Cert."] ¶¶ 4-5. Therefore, this factor is neutral. However, Defendant's preference to litigate in Texas weighs in favor of transfer, particularly since another similar case, as mentioned above, is already pending in Texas.

Plaintiffs argue that they worked for Defendant in New Jersey and, therefore, that their claims arose here (factor 3), and that their relative physical and financial condition as compared to Defendant (factor 4) weigh in favor of retaining this case in New Jersey. But, due to the diverse nature of the proposed putative classes, these factors are, at best, neutral, because by Plaintiffs' logic, the claims asserted on behalf of the putative class members from different states also arose in those states in which the putative class members work. And, as with the analysis of the Plaintiffs' choice of forum, the fact that the named plaintiffs will likely play a minimal role in this litigation renders factors 3 and 4 neutral. *See Santomenno*, 2012 U.S. Dist. LEXIS 44883, at *20-21.

---

[7] The Court notes that, since this motion to dismiss has been filed, a total of 7 new consents have been submitted, and 2 have been withdrawn. However, the record does not indicate where these individuals are located.

The convenience of the witnesses must also be considered, but "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Although Plaintiffs argue that many of Defendant's "key witnesses" are located in New Jersey, the Court finds that this is not the case. Instead, Defendant's relevant witnesses are likely to be located in every state in which a plaintiff/class member was or is located as the record indicates that these members are spread throughout the United States. More importantly, neither party contends that those witnesses would not be available in either forum. Furthermore, "the convenience of witnesses [who] are employees of a party carries no weight because the parties are obligated to procure their attendance at trial," *Mentor Graphics Corp. v. Quickturn Design Sys.*, 77 F. Supp. 2d 505, 510 (D. Del. 1999), and, as the party requesting transfer, any inconvenience imposed on Defendant's own witnesses is borne by itself. *See Koken v. Lexington Ins. Co.*, No. 04-2539, 2004 U.S. Dist. LEXIS 22192, at *11 (E.D. Pa. Nov. 2, 2004). Accordingly, this factor is neutral.

Finally, the Court must also consider "the location of books and records (only to the extent that the files could not be produced in the alternative forum)." "The technological advances of recent years have significantly reduced the weight of [this factor] in the balance of convenience analysis." *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003). *Jumara*, 55 F.3d at 879. While Plaintiffs argue that all relevant evidence is located in New Jersey, this argument is similarly rejected for the same reasons indicated above; Defendant's relevant records may be located in every location in which a class member was or is located, and, indeed, Plaintiffs themselves are not exclusively situated in New Jersey. Furthermore, Plaintiffs do not contend that evidence would be unavailable in either forum and, therefore, this factor carries "no weight." *Copley v. Wyeth, Inc.*, No. 09-722, 2009 U.S. Dist. LEXIS 62440, at *18 (E.D. Pa. July 16, 2009); *Coppola v. Ferrellgas*, 250 F.R.D. 195, 200 (E.D. Pa. 2008).

Accordingly, the Court finds the private interests weigh in favor of transfer.

### ii. The Public Interests Weigh in Favor of Transfer

Under Section 1404, the public interests a court should consider include:

(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Danka Funding*, 21 F. Supp. 2d at 474 (citing *Jumara*, 55 F.3d at 879-80) (internal quotations omitted). The Court finds these interests are also all either neutral or favor transfer.

The parties have not argued, and the Court cannot discern, why a judgment rendered in this case in one forum would not be enforceable in the other and, accordingly, this factor does not weigh in favor of either forum. *See Metro. Life Ins. Co. v. Bank One, N.A.*, No.'s 03-1882, 03-2784, 2012 U.S. Dist. LEXIS 137119, at *23-24 (D.N.J. Sept. 25, 2012); see also *Moore's Federal Practice* – Civil § 111.13 ("[W]hen both forums are federal district courts, this factor has little relevance because it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other.") (citing *Datasouth Computer Corp. v. Three Dimensional Technologies*, Inc., 719 F. Supp. 446, 450 (W.D.N.C. 1989)). Similarly, local interests,[8] the familiarity of the trial judge with the applicable state law,[9] and the

---

[8] Not only does the NJ Action involve claims under both New Jersey and Pennsylvania (and federal) law, but of the 107 employees who originally filed consents to sue, only 28 are located in New Jersey, with the remainder spread across ten other states, with a plurality of 35 located in Texas. Mortensen Cert. ¶¶ 4-5.

[9] *Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008) (stating that federal judges are "regularly called upon to interpret the laws of jurisdictions outside of the state in which they sit.")

11

relatively similar levels of congestion of the two forums,[10] are neutral factors. Nor has either party identified any public policy in either fora which might impact the transfer analysis. Collectively, these factors are either neutral.

"[P]ractical considerations are relevant and warrant transfer if they could make the trial easy, expeditious, or inexpensive." *Metro. Life*, 2012 U.S. Dist. LEXIS 137119 at *21. "One practical consideration that supports transfer is efficiency. 'To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'" *Id.* (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)). Although the presence of the FLSA retaliation claim (Count II) and the state law wage claims (Counts III and IV) renders the NJ Action sufficiently different to forego application of the first-filed rule, it is clear that both the Texas Action and the NJ Action contain a substantially similar claim concerning failure to pay overtime properly under the FLSA. *Compare* Tx. Compl. ¶¶ 20-35, 45-56, *with* Am. Compl. ¶¶ 25-29, 65-70. Therefore, this factor weighs in favor of transferring this matter to Texas, where discovery is already underway concerning Defendant's overtime payment policies. *See* Certification of Patrick W. McGovern (dated July 24, 2015) [hereinafter "McGovern Cert."] ¶¶ 10-11.

      iii.    **Interests of Justice**

---

[10] As of June 30, 2015, the District of New Jersey has 10,435 total filings spread over 17 judgeships, for an average of 614 filings per judge. The median time between filing and disposition for civil matters is 7.8 months. The Southern District of Texas has 14,159 total filings, spread over 19 judgeships, for an average of 745 filings per judge. The median time between filing and disposition for civil matters is 7.2 months. See http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-3.

Having weighed all the relevant factors, the Court finds that interests of justice favor a transfer to the Southern District of Texas. Indeed, while the first-filed rule is construed narrowly by the Third Circuit, the "interests of justice" inquiry under Section 1404 is not so limited. "Where, as here, related lawsuits are pending elsewhere, transferring a case serves not only private interests but also the interests of justice because it eliminates the possibility of inconsistent results, and conserves judicial resources." *CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 651 (D.N.J. 2004) (citations omitted); *see also Am. Inst. for History Educ., LLC v. E-Learning Sys. Int'l LLC*, No. 10-2607, 2010 U.S. Dist. LEXIS 120946, at *7 (D.N.J. Nov. 16, 2010).

In summary, while the first-filed rule is inapplicable here, application of the Section 1404 factors weighs in favor of transferring this matter the United States District Court for the Southern District of Texas.

## III.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss this matter under the first-filed rule is denied, but pursuant to 28 U.S.C. §1404(a), this matter is transferred the United States District Court for the Southern District of Texas.

Dated: February 24, 2016

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge